IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| JOSUE ARIEL FUENTES and<br>CRISTIAN AYALA RIVAS,<br><br>    Plaintiffs,<br><br>    v.<br><br>U.S. CITIZENSHIP AND<br>IMMIGRATION SERVICES,<br><br>    Defendant. | Civil Action No. 1:23-cv-408 (RDA/IDD) |

## ORDER

This matter comes before the Court on the parties' cross-motions for summary judgment ("Motions"). Dkt. Nos. 8, 13. This matter has been fully briefed and is now ripe for disposition. This Court has dispensed with oral argument as it would not aid in the decisional process. *See* Fed. R. Civ. P. 78(b); Local Civil Rule 7(J). Considering the Motions together with Plaintiffs' Memorandum in Support (Dkt. 9), Defendant's Memorandum in Support (Dkt. 14), Defendant's Opposition (Dkt. 16), Plaintiffs' Opposition (Dkt. 18), Defendant's Reply (Dkt. 21), Defendants' Notices of Supplemental Authority (Dkt. Nos. 24; 25), and Plaintiffs' Response to the Supplemental Authority (Dkt. 26), this Court DENIES Plaintiffs' Motion for Summary Judgment and GRANTS Defendant's Motion for Summary Judgment for the reasons that follow.

I.    PROCEDURAL BACKGROUND

Plaintiffs Josue Ariel Fuentes ("Fuentes") and Cristian Ayala Rivas ("Rivas") (collectively, "Plaintiffs") filed their Complaint on March 28, 2023 against Defendant United States Citizenship and Immigration Services ("Defendant" or "USCIS") based on Defendant's refusal to permit them to petition for immigration benefits on behalf of their parents. Dkt. 1. Plaintiffs raise two causes

of action: first, challenging Defendant's interpretation of 8 U.S.C. § 1101(a)(3) such that it excludes any individual who was granted Special Immigrant Juvenile Status ("SIJS") from conferring immigration benefits on their natural or adoptive parents; and, second, asserting that their inability to confer immigration benefits on their parents violates Equal Protection.

The parties agreed that this matter should be resolved through cross motions on summary judgment and submitted a proposed briefing schedule. Dkt. 6. The motion for a proposed briefing schedule was granted. Dkt. 7.

On July 6, 2023, Plaintiffs filed their motion for summary judgment. Dkt. 8. On August 16, 2023, Defendant filed its motion for summary judgment and its opposition to Plaintiffs' motion. Dkt. Nos. 13, 16. On September 5, 2023, Plaintiffs filed their Opposition brief. Dkt. 18. On September 12, 2023, Defendant filed its Reply. Dkt. 21.

On March 28, 2024, the Court sought any supplemental briefing. Dkt. 22. The parties indicated that they had none. Dkt. 23. Thereafter, Defendant filed two notices of supplemental authority. Dkt. Nos. 24; 25. Plaintiffs then filed a response. Dkt. 26.

## II.   UNDISPUTED STATEMENT OF FACTS

Before analyzing the Motions at issue here, the Court must first determine the undisputed summary judgment record, as summary judgment is only appropriate where there are no genuine disputes of material fact. The fact that the parties filed cross-motions for summary judgment does not generally relieve the Court of its obligation to determine whether there are disputes as to material facts which prevent the entry of judgment as a matter of law. *Webster v. ACB Receivables Mgmt., Inc.*, 15 F. Supp. 3d 619, 625 (D. Md. 2014). Here, in compliance with the Rules of Civil Procedure and the Local Rules, the parties have both set forth their respective statements of undisputed facts in enumerated paragraphs. In their respective opposition briefs, however, the

parties do not address the other side's statement of undisputed facts, as required by the Rules. Accordingly, it appears to the Court that the facts put forth by each side are essentially undisputed, notwithstanding the fact that neither party stipulated to the other party's statement of facts. The Court has reviewed each party's statement of undisputed facts and finds that, in large part, they are undisputed.

1. Fuentes arrived in the United States when he was a minor after being abandoned by his father. Dkt. 1-2 at 5 (Exh. A).[1]

2. Fuentes' mother, Karla Yamileth Figueroa Guardado, was granted custody by the Juvenile and Domestic Relations District Court in Loudoun County, Virginia (the "Loudoun JDRDC") in 2014. *Id*.

3. The Loudoun JDRDC also made findings that "reunification with one or both of Josue's parents is not viable due to abuse, neglect, abandonment, or similar state basis within the meaning of Section 101(a)(27)(J) of the I[mmigration and] N[ationality] A[ct (the "INA")]." *Id*.

4. On November 19, 2014, Fuentes filed an immigrant visa petition on Form I-360 pursuant to the Special Immigrant Juvenile ("SIJ") program, 8 U.S.C. § 1101(a)(27)(J). He was then granted lawful permanent residency. Dkt. 1-2 at 15 (Exh. B).

5. On February 11, 2016, Fuentes became a naturalized U.S. Citizen. Dkt. 1-2 at 17 (Exh. C).

6. Fuentes did not file a Form I-130 Petition for an Alien Relative on behalf of his mother. Dkt. 1 ¶ 34.

7. On November 2, 2017, Ms. Guardado submitted an application for legal status "as the parent of an active-duty member of the U.S. Armed Forces," based on Fuentes military service. Dkt. 1-2 at 19 (Exh. D).

8. Ms. Guardado's application was denied, "because your son was granted a Green Card based on his SIJ classification and he later naturalized" and therefore "he may not apply for his natural or prior adoptive parents to get military parole-in-place" even for the "non-abusive, custodial parent." *Id*. at 20.

---

[1] All page number references for Docket Entry 1-2 refer to the CM/ECF designated page numbers given that the docket entry contains multiple documents each with its own set of page numbers.

9. Rivas also arrived in the United States as a minor after being abandoned by his father and being targeted by gangs in El Salvador. Dkt. 1-2 at 21-27 (Exh. E).

10. On February 4, 2013, the Circuit Court for Montgomery County, Maryland (the "CCMC") granted custody of Rivas to his paternal uncle, Jose Luis Argueta. *Id*.

11. The CCMC made findings that "reunification with one or both of Christian's [sic] parents is not viable due to abuse, abandonment, or neglect, or similar basis found under state law under INA Section 101(a)(27)(J), 8 U.S.C. § 1101(a)(27)(J)(i) and 8 C.F.R. § 204.11(a), (d)(2)(ii), to mean that family reunification is not viable." *Id*. at 24.

12. Rivas' mother consented to the grant of custody to his uncle. *Id*. at 27.

13. On February 24, 2014, Rivas filed an immigrant visa petition on Form I-360 pursuant to the Special Immigrant Juvenile ("SIJ") program, 8 U.S.C. § 1101(a)(27)(J). He was then granted lawful permanent residency. Dkt. 1-2 at 50 (Exh. F).

14. On August 5, 2021, Rivas became a naturalized U.S. Citizen. Dkt. 1-2 at 52 (Exh. G).

15. On December 23, 2021, Rivas filed an I-130 Petition for Alien Relative for his mother, Teresa Rivas Vasquez. Dkt. 1-2 at 54.

16. That petition was denied on January 25, 2023, because individuals who apply for lawful permanent resident status "as an SIJ are not eligible to later confer immigration benefits to their biological or adoptive parent(s), even if they are not the parent that abused, neglected, or abandoned the child." *Id.*

### III. LEGAL STANDARD

Summary judgment is appropriate only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The party seeking summary judgment has the initial burden to show the absence of a material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The facts shall be viewed, and all reasonable inferences drawn, in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255. "(A) party opposing summary judgment may not simply rest on the allegations of his complaint but must instead come forward with specific evidence showing the existence of a genuine issue of fact."

*Muhammad v. Giant Food*, 108 F. App'x 757, 764 (4th Cir. 2004) (citing *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991)).

The standard of review does not change when ruling on cross-motions for summary judgment. *E.I. DuPont De Nemours & Co. v. Ampthill Rayon Workers, Inc.*, 516 F. Supp. 2d 588, 593 (E.D. Va. 2007). When faced with cross-motions for summary judgment, a court must review each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (quotations omitted).

## IV.    ANALYSIS

Both parties seek entry of summary judgment on the two counts of the Complaint. The Court will analyze each count in turn; however, before reaching an analysis of the merits, the Court will summarize the relevant, applicable immigration law.

### A.    The Special Immigrant Juvenile ("SIJ") Program

In 1990, Congress created the SIJ classification to aid alien[2] children physically present in the United States who were declared dependent on state courts and who were deemed eligible for long-term foster case. Immigration Act of 1990, Pub. L. No. 101-649, § 153, 104 Stat. 4978 (1990). The purpose of the classification was to help alleviate "hardships experienced by some dependents of United States juvenile courts by providing qualified aliens with the opportunity to apply for special immigrant classification and lawful permanent resident status, with the possibility of becoming citizens of the United States in the future." 58 Fed. Reg. 428.

---

[2] Plaintiffs object to the term "alien" and prefer the term "noncitizen." Dkt. 9 at 1 n.1. As Plaintiffs acknowledge, however, Congress uses the term "alien" in the relevant statutes. Accordingly, in describing the statutory and regulatory regime, the Court will also use the term alien.

5

In 1998, Congress revised the SIJ definition to include an additional requirement – that for a juvenile to obtain SIJ classification, there must be a finding of "abuse, neglect, or abandonment." Departments of Commerce, Justice, and State, The Judiciary, and Related Agencies Appropriations Act, Pub. L. No. 105-119 § 113, 111 Stat. 2440, 2460-61 (1998). In 2008, Congress again revised the SIJ classification to replace the foster care requirement with language permitting SIJ classification based on a state court's finding that "reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law." 8 U.S.C. § 1101(a)(27)(J).

SIJ classification provides a pathway to lawful permanent residency, such that once an alien child's SIJ petition is approved and an immigrant visa is available, the alien child may apply to adjust their status to that of a lawful permanent resident ("LPR"). 8 U.S.C. §§ 1255(a), (h). LPRs who have satisfied certain requirements may apply to become U.S. Citizens. 8 U.S.C. § 1427(a). Ordinarily, U.S. Citizens who are at least 21 years old may petition for immigration benefits on behalf of their parents. 8 U.S.C. § 1151(b)(2)(A)(i); 8 C.F.R. § 204.2(f). Parents whose children receive SIJ classification are excluded however under the so-called "exclusion clause" which provides that "no natural parent or prior adoptive parent of any alien provided special immigrant status under this subparagraph shall thereafter, by virtue of such parentage, be accorded any right, privilege, or status under this chapter." 8 U.S.C. § 1101(a)(27)(J)(iii)(II).

The current version of the SIJ statute provides that an immigrant who is present in the United States:

> (i) who has been declared dependent on a juvenile court located in the United States or whom such a court has legally committed to, or placed under the custody of, an agency or department of a State, or an individual or entity appointed by a State or juvenile court located in the United States, and whose reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law;

6

>> (ii) for whom it has been determined in administrative or judicial proceedings that it would not be in the alien's best interest to be returned to the alien's or parent's previous country of nationality or country of last habitual residence; and
>
>> (iii) in whose case the Secretary of Homeland Security consents to the grant of special immigrant juvenile status, except that--
>
>>> (I) no juvenile court has jurisdiction to determine the custody status or placement of an alien in the custody of the Secretary of Health and Human Services unless the Secretary of Health and Human Services specifically consents to such jurisdiction; and
>
>>> (II) no natural parent or prior adoptive parent of any alien provided special immigrant status under this subparagraph shall thereafter, by virtue of such parentage, be accorded any right, privilege, or status under this chapter.

8 U.S.C. § 1101(a)(27)(J).

USCIS is the agency responsible for adjudicating applications and petitions for immigration benefits. It has adopted a regulation that mirrors the exclusion clause: "The natural or prior adoptive parent(s) of a petitioner granted special immigrant juvenile classification will not be accorded any right, privilege, or status under the Act by virtue of their parentage." 8 C.F.R. § 204.11(i).

        B.        Challenge to USCIS Interpretation of Section 1101(a)(27)(J)

Plaintiffs' first cause of action challenges USCIS' interpretation of Section 1101(a)(27)(J)(iii)(II) under the Administrative Procedure Act ("APA"), which requires the Court to set aside any agency decision that is arbitrary, capricious, an abuse of discretion, or otherwise contrary to law. 5 U.S.C. § 706(2)(A). Although this is an evolving area of the law, here, under either the Supreme Court's traditional test in *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984), or the Supreme Court's more recent jurisprudence in *Loper Bright Enter. v. Raimondo*, 144 S. Ct. 2244 (2024), the first and last inquiry that the Court must undertake is an analysis of the plain language of the statute.

The exclusion clause provides that "no natural parent . . . of **any alien provided special immigrant status** under this subparagraph shall **thereafter**, by virtue of such parentage, be accorded any, right, privilege, or status under this chapter." 8 U.S.C. § 1101(a)(27)(J)(iii)(II) (emphasis added). Plaintiffs argue that, because they are U.S. Citizens, Section 1101(a)(27)(J)(iii)(II)'s "no natural parent" exclusion does not apply to them and that Defendant's interpretation to the contrary, applying the exclusion to the parent of any person granted SIJ status, is therefore unreasonable, arbitrary, and capricious. Plaintiffs are incorrect.

The plain language of the statute applies to the natural parent of any person who is an alien *at the time that they receive special immigrant status* and deprives them of the opportunity to obtain benefits by virtue of the minor alien receiving the special status for any time *thereafter*. Only aliens can obtain SIJ classification. Thus, Congress' prohibition on the parent of any alien who has received such status benefiting from that status at any time thereafter, including after that alien becomes a U.S. Citizen, is a natural reading of the statute. Plaintiffs' interpretation of the statute would deprive the exclusion clause of all meaning and is nonsensical, because it would limit the exclusion clause to persons who are aliens *at the time the parent seeks the immigration benefit*. But, SIJ classification is intended to provide a path to citizenship for minor alien children and only U.S. Citizens can obtain may apply for immigrant visas for their parents. 8 U.S.C. § 1151(b)(2)(A)(i). Because persons who are not U.S. Citizens already cannot apply for parentage-based immigrant visas for their parents, Plaintiffs' interpretation of the statute would render the exclusion clause superfluous.

Plaintiffs' Opposition brief most clearly sets out Plaintiffs' attempt to deprive the exclusion clause of all meaning. The exclusion clause applies to the natural parent "of any alien provided special immigrant status." 8 U.S.C. § 1101(a)(27)(J)(iii)(II). Yet, Plaintiffs' interpretation reduces

8

that paragraph to "the natural parent of any alien." Dkt. 18 at 9 ("If Mr. Fuentes at the time of filing for PIP was a permanent resident, the agency could have properly denied the application. Ms. Figueroa would have been the 'natural parent (mother)' of 'an alien' and she would be seeking immigration benefits."). Rather, the plain meaning and intent of the statute is to exclude from receiving immigration benefits by virtue of their parentage any parent whose child gains legal status in the United States by virtue of becoming "dependent on a juvenile court" or similar commitment to the custody of an agency or individual appointed by a court. 8 U.S.C. § 1101(a)(27)(J). To find otherwise, would also create perverse immigration incentives. If alien children are provided a path to citizenship by virtue of their abandonment and, once citizens, can provide a path to citizenship for their natural parents, then Congress would have created an incentive for alien parents to abandon their children in the United States only to reappear when their children have come of age and becomeU.S. Citizens such that they may obtain citizenship for the parents. It is evident that Congress meant to incentivize the opposite behavior and to warn alien parents that, if your child becomes a U.S. Citizen by virtue of SIJ classification, you thereafter lose any opportunity to rely on your U.S. Citizen child to provide any path for your own citizenship.

Plaintiffs' interpretation would also deprive the word "thereafter" in the statute of any meaning. As the Fourth Circuit has instructed, in conducting a statutory analysis, a reviewing court has a "duty, where possible, 'to give effect' to all operative portions of the enacted language, including its 'every clause and word.'" *Shipbuilders Council of Am. v. U.S. Coast Guard*, 578 F.3d 234, 244-45 (4th Cir. 2009). The term "thereafter" is plainly meant to preclude all future benefits to any natural parent whose child receives SIJ classification. BLACK'S LAW DICTIONARY 1478 (6th ed. 1990) (defining "thereafter" as "[a]fter the last time mentioned, after

9

that, after that time, afterword, subsequently, thenceforth"). There is no limitation placed on "thereafter" that would limit the exclusion clause to the time period during which the SIJ beneficiary remains an alien. It would be impermissible for the Court to interpret the exclusion clause to add a temporal limitation that Congress did not intend to exist. *See Friends of Everglades v. S. Fla. Water Mgmt. Dist.*, 570 F.3d 1210, 1224 (11th Cir. 2009) ("[W]e are not allowed to add or subtract words from a statute; we cannot rewrite it."). And, indeed, adding such a limitation to the exclusion clause such that it only applied while the SIJ beneficiary was an alien would be illogical because, as noted above, an alien SIJ beneficiary cannot obtain citizenship for an immediate relative. 8 U.S.C. § 1151(b)(2)(A)(i) (providing that "immediate relatives" means "the children, spouses, and parents of a citizen of the United States").

Seeking to avoid this conclusion, Plaintiffs argue that the "exclusion clause does not cross-reference family-based petitions" and note that "Ms. Figueroa's denial of her Parole in Place is evidence that the scope of 8 U.S.C. § 1101(a)(27)(J) goes beyond family-based petitions." Dkt. 18 at 8. Not so. The exclusion clause bars the extension of immigration benefits "by virtue of such parentage" of a SIJ-classification recipient. 8 U.S.C. § 1101(a)(27)(J)(iii)(II). And, Ms. Figueroa's petition was a family-based or parentage-based petition, because that petition was based on her status as Fuentes' mother or, more specifically, her status as the mother of a member of the U.S. armed forces. Dkt. 1-2 at 19-20 (Exh. D).

In sum, the language of 8 U.S.C. § 1101(a)(27)(J)(iii)(II) is clear and applies to prohibit the natural parent of an alien recipient of SIJ classification from ever receiving any immigration benefits by virtue of their relationship to that SIJ beneficiary. Thus, Defendant's interpretation and regulation applying Section 1101(a)(27) to exclude the "parent(s) of a petitioner granted special immigrant juvenile classification" is compelled by the plain language of the statute and is

not unreasonable, arbitrary, or capricious. 8 C.F.R. § 204.11(i). To hold otherwise would add a limitation to the exclusion clause not intended by Congress and would treat as surplusage the statutory reference to an alien who was "provided special immigrant status" and to the parent "thereafter" being precluded from seeking immigration benefits "by virtue of such parentage." 8 U.S.C. § 1101(a)(27)(J)(iii)(II). Because Defendant's interpretation of the statute and application of the statute to prohibit Ms. Figueroa and Ms. Vasquez from receiving immigration benefits by virtue of their parentage of Plaintiffs (who are both SIJ beneficiaries) comports with the plain language of the statute, Plaintiffs' claims in Count 1 fail as a matter of law and Defendant is entitled to summary judgment on Count 1.

## C. Equal Protection Challenge

Plaintiffs next claim that the exclusion clause also violates the Fifth Amendment's promise of Equal Protection. Plaintiffs concede that a rational basis level of scrutiny applies here and further concedes that the exclusion clause was rational when enacted but argue that an exclusion clause based on SIJ status is not now rationally related to any immigration policy. Plaintiffs' arguments fail to carry their heavy burden to demonstrate that the exclusion clause lacks any rational basis to immigration policy.

As the Fourth Circuit has recognized, "[t]o succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). "Once this showing is made, the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny." *Id.* The parties agree that rational basis review applies here. Under rational basis review, "legislation is presumed to be valid and will be sustained if the classification drawn by the

11

statute is rationally related to a legitimate state interest." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). A classification not involving a suspect class "'must be upheld against [an] equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.'" *Orquera v. Ashcroft*, 357 F.3d 413, 425 (4th Cir. 2003) (quoting *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993)). And the legislature "need not actually articulate at any time the purpose or rationale supporting its classification." *Heller v. Doe*, 509 U.S. 312, 320 (1993) (internal quotation marks omitted).

The parties generally skip the first step of the equal protection analysis.[3] The Court, however, is not so willing to accept Plaintiffs' argument that the exclusion clause treats U.S. Citizens who once had SIJ-status differently from other U.S. Citizens. The plain language of the exclusion clause indicates that it is aimed at *the noncitizen parents* not the minor children who have SIJ-status. It is the *noncitizen parents* who cannot "be accorded any, right, privilege, or status under this chapter." 8 U.S.C. § 1101(a)(27)(J)(iii)(II). Thus, the exclusion clause, by its own terms, does not apply to Plaintiffs at all and provides Plaintiffs no less rights than any other U.S. Citizen. Plaintiffs' frame their equal-protection challenge as based on the "right to file a petition for a parent," but that right is not impeded – it is the right of the parents to claim any such status that is affected. Dkt. 9 at 17. Moreover, taken on its face, Plaintiffs' argument would result in even an abusive, neglectful, or abandoning parent being able to claim citizenship based on their relationship with a child given SIJ status, because Plaintiffs argue that Congress should not be permitted to prevent U.S. Citizens who benefit from SIJ status from petitioning for immigration

---

[3] Although Defendant does not address this issue first, Defendant does argue that Plaintiffs' analysis relies on "the incorrect lens through which to view the rationality of the exclusion clause" because the exclusion clause applies to "*all noncitizen* parents." Dkt. 14 at 22 (emphasis in original).

benefits for their parents. Sister courts have rejected Plaintiffs' perspective and have recognized, "when a citizen-child claims a personal constitutional violation based on governmental treatment of an undocumented [or noncitizen] parent, the reviewing court's analysis remains focused on the challenged statute's relationship to those it most directly effects, not their children." *R.V. v. Mnuchin*, 570 F. Supp. 3d 322, 336 (D. Md. 2021). The *R.V.* Court recognized that "courts frequently have rejected arguments by citizen children that the deportation of their noncitizen parents deprives them of their own constitutional rights." *Id.* at 333. So too, here, the exclusion clause's application to the parents of children who received SIJ parents does not deprive Plaintiffs of their own rights. Thus, Count 2 fails on this basis.

Turning to the next step of the analysis, Count 2 also fails because the exclusion clause easily passes rational-basis muster. SIJ status is intended to provide a pathway to legal status and citizenship for those minors who have "been declared dependent on a juvenile court located in the United States" or who have other similar status and "whose reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis." 8 U.S.C. § 1101(a)(27)(J)(i). If a juvenile has been declared dependent on a court within the United States, Congress can rationally decide that the parent of a child who has been declared dependent (or who has similar status) and abused, neglected, or abandoned should not be permitted to later use that child's dependency on the court system to obtain their own citizenship. *See Yeboah v. U.S. Dep't of Just.*, 345 F.3d 216, 221 (3d Cir. 2003) ("The SIJ provisions of the INA were enacted in 1990 to protect abused, neglected, or abandoned children who, with their families, illegally entered the United States. Congress provided an alternative to deportation for these children. Rather than being deported along with abusive or neglectful parents, or deported to parents who had abandoned them once in the United States, such children may seek special status to remain in the United

13

States."). Congress could also reasonably and rationally decide that a provision, like the exclusion clause, is necessary to avoid creating perverse incentives for parents to create dependencies, so that their child could later assist them in obtaining citizenship for which they might otherwise be ineligible. Interestingly, Plaintiffs concede that these are rational bases and that "it was rational to prohibit parents of children who obtained SIJS benefits from receiving legal status prior to 2008." Dkt. 9 at 16. Plaintiffs argue that it is no longer rational because there is no longer a requirement that a child "had to be placed in foster care." *Id.* But Plaintiffs fail to acknowledge that SIJ status is a special status that requires a determination that Plaintiffs are dependent on a court (or have similar status) and that Congress can rationally decide that *no parent* of a child placed whose circumstances required such status should be permitted to benefit from the child being placed in that status.

Ms. Figueroa's circumstances indicate the unusual circumstances that the absence of an exclusion clause might create. Plaintiff Fuentes arrived in the United States after being abandoned by his father. At that time, Ms. Figueroa was apparently present in the United States. The Loudoun JDRDC placed Fuentes in his mother's custody, but also found Fuentes eligible for SIJ status. Thus, Fuentes was provided this special SIJ status providing a pathway to citizenship based on the abuse, neglect, or abandonment of a parent; yet was placed into the custody of a biological parent and, now, that biological parent is attempting to use the status that Fuentes received by virtue of being "abandoned" to confer immigration benefits on herself. Similarly, for Plaintiff Rivas, his mother was in El Salvador while he was in the United States and his mother consented to the juvenile court placing Rivas on SIJ status and in the custody of an uncle. Dkt. 1-2 at 21-27 (Exh. E). Congress can rationally and reasonably determine that it does not want to incentivize aliens to send their children alone to the United States so that the child can use the SIJ status to obtain

14

citizenship and then claim immigration benefits for their parents (regardless of whether that particular parent's abandonment was the basis for the SIJ status). Put another way, one can see how immigrant parents would be incentivized to "abandon" their children such that their children could obtain legal status and then use that legal status to confer status on their parents. Although Plaintiffs attempt to distinguish between "abandoning" and "non-abandoning" parents, that is a matter of perspective (especially, when there is a finding that a child is a dependent on a court) and subject to abuse and would require the exercise of great resources to determine whether a parent who voluntarily turns the care of her child onto another person has "abandoned" that child for purposes of SIJ status. *Azizi v. Thornburgh*, 908 F.2d 1130, 1134 (2d Cir. 1990) (denying the plaintiff's equal protection claim because Congress "identified a potential for fraudulent marriages during the pendency of a deportation proceeding," and therefore "had a rational basis for prescribing a two-year foreign residency period as a prerequisite to permanent resident status"). Congress can rationally decide that a bright-line rule is the better way to exercise its immigration authority.

At a more granular level, Plaintiffs' claim that the exclusion clause is not related to "immigration policy objective," Dkt. 9 at 14, is belied by the exclusion clause itself, which applies only to immigration benefits, 8 U.S.C. § 1101(a)(27)(J)(iii)(II) (precluding parents of SIJ recipients from being "accorded any, right, privilege, or status under *this chapter*" (emphasis added)). Moreover, by excluding parents of children who receive SIJ status from relying on that status to obtain citizenship, Congress chose to limit the expansion of benefits to those minor children directly impacted and not to exponentially expand the category of persons eligible for citizenship. The Supreme Court has recognized that such line-drawing passes rational basis. See *Mathews v. Diaz*, 426 U.S. 67, 83-84 (1976) (holding that the "task of classifying persons for

15

benefits . . . inevitably requires that some persons who have an almost equally strong claim to favored treatment be placed on different sides of the line. When this brand of policy choice must be made, we are especially reluctant to question the exercise of congressional judgment"). In the context of immigration, Congress' authority to classify and categorize different persons entitled to apply for and receive immigration benefits is at its highest. *See Johnson v. Whitehead*, 647 F.3d 120, 126 (4th Cir. 2011) (explaining "in matters of immigration and naturalization, 'Congress regularly makes rules that would be unacceptable if applied to citizens'").

Courts continue to recognize Congress' authority in this area and, applying rational basis review, have held that many similar provisions of immigration law meet that standard. *See, e.g.*, *Johnson*, 647 F.3d at 127 (upholding statute that conferred citizenship on marital children of naturalized parents with sole custody after a legal separation, but not on non-marital children of naturalized parents who were never married, but who had separated).[4] Indeed, in Defendant's Notice of Supplemental Authorities, Defendant noted that a district judge in the Eastern District of New York recently rejected an equal protection challenge to this same exclusion clause. *See* Dkt. 25-1 (*Tello, et al., v. Garland, et al.*, No. 23-cv-5736, Dkt. 39 (E.D.N.Y. Sept. 26, 2024)). The *Tello* Court found that Congress had two rational bases for the exclusion clause:

---

[4] *See also Perdido v. INS*, 420 F.2d 1179, 1180-81 (5th Cir. 1969) (applying rational basis and finding that Congress made a rational and "reasonable distinction" with no "constitutional infirmity" when it allowed citizens age 21 and older to confer immigration benefits on their parents); *Delgado v. INS*, 637 F.2d 762, 763 (10th Cir. 1980) ("[Plaintiff] Delgado asserts that his deportation will deprive his children of their Fifth and Fourteenth Amendment rights . . . his children will be forced either to accompany their father to Mexico or to remain in this country without him . . . One of these undesirable consequences certainly will occur if Delgado is deported. . . . We cannot say, however, that the government's action is rendered unconstitutional by such consequences."); *Kruer ex rel. S.K. v. Gonzales*, No. 05-120, 2005 WL 1529987, at *7 (E.D. Ky. June 28, 2005) (collecting cases) ("The rejection of such constitutional challenges by the various courts noted above is centered around the recognition of Congress' power to regulate immigration . . . . without violating constitutional rights, even where conditions might be burdensome to children or the family unit.").

16

(i) "permanently barring parents of children who were found to be abused, neglected, or abandoned from obtaining any immigration benefit as a result of their parentage serves the legitimate purpose of protecting children from current or future harm by their parents"; and (ii) "[i]t is similarly rational to permanently bar parents of children who obtained protection in the United States from receiving future immigration benefits via an I-130 petition to prevent a parent from engaging in immigration fraud by obtaining a false state court order finding the abuse, abandonment, or neglect of a child, and then to later receive immigration benefits as a parent of that child." *Id.* This Court likewise finds these two purposes for the exclusion clause provide a rational basis reasonably related to Congress' immigration authority and policy. Although Plaintiffs attempt to distinguish the *Tello* decision by arguing that the parents at issue here are non-abandoning parents, Plaintiffs fail to explain why it is illegitimate for Congress to prohibit *any* parent whose child has become dependent on a court (or similar status) such that they qualify for SIJ status to rely on their relationship with that child to claim citizenship.[5]

In sum, this Court finds that the exclusion clause does not discriminate between U.S. Citizens and does not preclude U.S. Citizens from petitioning for benefits. Rather, the exclusion clause precludes noncitizen parents from obtaining benefits based on their children having obtained SIJ status, and subsequently having obtained citizenship. Moreover, the exclusion clause

---

[5] Plaintiffs also rely heavily on Fuentes' circumstances to allay any concern regarding fraud. Plaintiffs note: "After all, a biological parent, as in the case of Mr. Fuentes, filed a complaint in the Commonwealth of Virginia; a judge heard the evidence and made a finding of 'abuse, neglect, or abandonment." Dkt. 26 at 3. Nonetheless, those circumstances do not assuage the concerns regarding fraud because, again, Fuentes' father consented to the SIJ finding. Dkt. 1-2 at 12. What is to prevent a father and mother from conspiring to achieve U.S. citizenship for their child and at least one parent by having one parent – especially where that parent remains in the foreign country – execute a consent to special immigration status and state that they have abandoned the child? Thus, the Court finds that Congress retains a rational and legitimate concern regarding fraud, even in the wake of the 2008 Amendments to the SIJ provisions requiring only abuse, neglect, or abandonment by one parent.

is rationally related to Congress' legitimate purpose of protecting children and of preventing fraud. Accordingly, Count 2 fails as a matter of law and the Court will grant summary judgment in favor of Defendant.

## V.   CONCLUSION

This Court finds that both counts of the Complaint fail as a matter of law. The plain language of the exclusion clause supports Defendant's interpretation and application of the statute to preclude Plaintiffs' mothers from obtaining immigration benefits based on their parentage. Moreover, there is no valid Equal Protection challenge to the exclusion clause because it does not distinguish between U.S. Citizens and because it is rationally related to legitimate government interests in protecting children and preventing fraud in the immigration context.

Accordingly, it is hereby ORDERED that Plaintiffs' Motion for Summary Judgment (Dkt. 8) is DENIED; and it is

FURTHER ORDERED that Defendant's Motion for Summary Judgment (Dkt. 13) is GRANTED; and it is

FURTHER ORDERED that the Clerk of the Court is DIRECTED to enter Rule 58 judgment on behalf of Defendant and against Plaintiffs; and it is

FURTHER ORDERED that the hearing scheduled for November 21, 2024 is TERMINATED as oral argument would not aid in the decisional process; and it is

FURTHER ORDERED that the Clerk of the Court is DIRECTED to place this matter among the ended causes.

IT IS SO ORDERED.

Alexandria, Virginia
November 15, 2024

/s/
Rossie D. Alston, Jr.
United States District Judge